UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Federal Deposit Insurance Corporation,　　　　　　　　　　No. 15cv434 (PAM/JJK)
as Receiver for Patriot Bank Minnesota,

　　　　　　　　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　**MEMORANDUM AND ORDER**

John Milbauer, Sarah Bazey, Greg Evgen,
Mike Muske, Benson Theuninick,
Donald Waldoch, and Leonard Wojtowicz,

　　　　　　　　　　　Defendants.

---

　　　　This matter is before the Court on Defendants' Motion to Dismiss and Motion for In Camera Review. For the reasons that follow, the Motions are denied.

**BACKGROUND**

　　　　Patriot Bank was founded in 1998 in Lino Lakes, Minnesota, as Lino Lakes State Bank. By 2011, the Bank had three branches and was headquartered in Forest Lake, Minnesota. In late 2011, the Bank failed and the FDIC stepped in as receiver for the Bank in January 2012.

　　　　The FDIC brought this lawsuit claiming that the Bank's President, John Milbauer, and seven members of the Bank's Board of Directors and Directors' Lending Committee were negligent or grossly negligent in approving 14 loans totaling more than $8 million, and that these individuals thereby breached their fiduciary duties to the Bank. The FDIC alleges that

Milbauer exercised nearly sole control over large loans at the Bank and that he made loan decisions that he knew or should have known were contrary to the Bank's lending policies and common business sense. According to the FDIC, the members of the Lending Committee rubber-stamped Milbauer's lending decisions, failing to comply with their duties to independently evaluate the challenged loans.

The FDIC's claims sound in negligence, gross negligence, and breach of fiduciary duty. Defendants' Motion to Dismiss seeks dismissal of all claims.

**DISCUSSION**

**A.    Motion for In Camera Review**

Defendants seek disclosure of the FDIC's 2007 Report of Examination of Patriot Bank, contending that this Report will show that the FDIC approved some of the very loan processes it now criticizes. Defendants ask the Court to order the FDIC to submit this Report to the Court for in camera review. But in essence this Motion seeks to compel discovery that has not begun because the parties have yet to confer on a proposed pretrial schedule under Rule 26(f). As the FDIC points out, Rule 26(d) provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." And it appears that the Report is in any event not relevant to the FDIC's claims, but rather to Defendants' potential defenses to those claims. Early discovery of the Report is not warranted, and the Motion is therefore denied.

**B.     Motion to Dismiss**

Defendants raise multiple arguments in support of their assertion that the Complaint fails to state a claim on which relief can be granted. Most of these arguments, however, are fact-dependent and are thus not appropriate for a motion to dismiss, which requires the Court to assume the facts in the Complaint to be true and to construe all reasonable inferences from those facts in the light most favorable to the FDIC. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). To survive a motion to dismiss, a complaint need only contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007).

Defendants argue that the FDIC is using hindsight to attempt to hold Milbauer and the members of the Loan Committee liable for loans that turned out to be bad. In addition, Defendants contend that the FDIC cannot prove causation because the "Great Recession" was the independent, intervening cause for the loans' failure. Defendants also argue that (1) the Bank's certificate of incorporation contains an exculpatory clause that relieves the committee members from liability for breaches of fiduciary duties, (2) there are no facts supporting a claim of gross negligence, (3) the business judgment rule provides a complete defense to this lawsuit, and (4) Minnesota law allows the Loan Committee to rely on documents Milbauer prepared and thus shields the Committee from liability.

**1.     Hindsight/Causation**

While it may be true that there is an element of hindsight in some of the FDIC's claims, the Complaint contains sufficient allegations to support the FDIC's theory that

3

Milbauer and the Committee should have known that the challenged loans were bad at the time the loans were made. For example, the FDIC criticizes the Bank's handling of an unsecured loan to two individuals, K.L.O. and M.W.O. The FDIC alleges that Milbauer and the Committee approved a total of $3.8 million in unsecured loans to these individuals—as well as an additional $600,000 secured by stock in a privately held nightclub business—without completing a written credit analysis (something the Bank's loan policy required). (Compl. ¶ 377.) The FDIC also alleges that these unsecured loans were more than 20 times higher than the Bank's limitation for unsecured loans. (Id. ¶ 380.)

In the Motion, Defendants attempt to justify the Bank's loan decisions by arguing that K.L.O. had a net worth of more than $30 million at the time of the loans. This may ultimately be a defense to the FDIC's claim regarding the loan, but it is not an indication that the FDIC has failed to state a claim as an initial matter. The FDIC alleges as to each loan that it was bad at the time it was made and that the Committee and Milbauer knew the loans were bad or could have discovered that the loans were bad through the exercise of reasonable oversight. The FDIC has stated a claim on which relief can be granted.

Similarly, Defendants' causation argument asks the Court to ignore the factual allegations in the Complaint and substitute its own judgment. This is inappropriate on a motion to dismiss. It may be that a jury will determine that the losses the Bank suffered were caused by the Great Recession and not any failure on Defendants' part, but that is not something that can be determined at the pleading stage.

## 2. Exculpatory Clause

The FDIC does not deny that the Bank's incorporation certificate contains an exculpatory clause limiting the liability of directors. The clause does not apply to Milbauer, however, because he was not a director. And the clause does not prohibit liability altogether; rather, it provides that a director

> shall not be personally liable . . . for any monetary damages for breach of fiduciary duty [but] this provision does not eliminate or limit the liability of a director for: (1) breach of the director's duty of loyalty to the corporation or its stockholders; (2) acts of omissions not in good faith or that involve intentional misconduct or a knowing violation of law . . . .

(Lino Lakes State Bank Certificate of Incorporation (Docket No. 21-1) at 2.)

The FDIC argues the Federal Deposit Insurance Act's gross-negligence standard preempts any attempt under Minnesota law to establish a higher standard of liability such as that reflected in the Certificate. 12 U.S.C. § 1821(k). The Supreme Court has held that the FDIA establishes a "floor" for liability. Atherton v. FDIC, 519 U.S. 213, 227 (1997). Thus, a state law may provide a stricter standard of liability such as simple negligence, but may not restrict recovery based on a state statute that provides a higher standard of liability such as intentional misconduct. Id. at 227-28.

In addition, to the extent that this clause could be construed to prohibit a claim against the Committee for a breach of fiduciary duty, the clause allows liability for breach of the duty of loyalty and the FDIC has pled such a breach. (Compl. ¶ 449.) Defendants contend that this allegation is insufficient because it is conclusory. But it is only conclusory taken out of context. In the a preceding paragraph, the FDIC sets forth conduct that it contends rises to

5

a breach of the duty of loyalty. (Id. ¶ 447.) Defendants dispute the inferences the FDIC draws from the facts pled, but those inferences are plausible. Whether Defendants' conduct violated their duty of loyalty is a question of fact that is not appropriately resolved in a motion to dismiss.

### 3. Gross Negligence/Minnesota law

As noted above, the FDIA, as amended by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), allows directors and officers of banks such as Patriot Bank to be held personally liable for gross negligence, unless the state imposes a lesser standard of care such as simple negligence. 12 U.S.C. § 1821(k); Atherton, 519 U.S. at 227. Minnesota law does provide for a lower standard of care, that of an "ordinarily prudent person in a like position." Minn. Stat. §§ 302A.251, 392A.361.

Defendants rely on an 1948 case to attempt to argue that the standard is actually higher than gross negligence in Minnesota, allowing for personal liability only for "fraud, collusion, or like misconduct." Warner v. E.C. Warner, Co., 33 N.W.2d 721, 726 (Minn. 1948). But Warner predated the statutory liability scheme by several decades, and thus the statutory pronouncement on this issue governs. And it is doubtful that Warner's higher standard would apply given the Supreme Court's determination that § 1821(k) provides the floor for the duty of care to which banks are subject. Atherton, 519 U.S. at 227-28. In any case, though, the FDIC's only simple negligence claim is against Milbauer alone; the claims against the Committee members are gross negligence claims and are cognizable.

Defendants rely on another provision of Minnesota law to argue that the Committee

6

properly relied on financial data and reports prepared by others, and thus that the FDIC's gross negligence claim fails on its face. Minn. Stat. § 302A.251, subd. 2. Defendants argue that Minnesota law's safe harbor for such reliance means that the FDIC was bound to plead an exception to this rule in order to sufficiently state a claim for gross negligence against the Committee. But the safe-harbor statute does not set forth the elements of a gross-negligence claim, rather it provides a defense to such a claim. Defendants' arguments are not appropriate on a motion to dismiss.

In any event, the FDIC alleges that the statute's safe harbor does not apply because Committee could not reasonably have believed that Milbauer was reliable, id. § 302A.251, subd. 2(a)(1), and that the Committee had other information about the majority of the challenged loans that should have put them on notice that their "reliance [on Milbauer's assurances was] unwarranted" under subd. 2(b). Minnesota law provides no basis for dismissal of the FDIC's gross-negligence claim.

Defendants also contend that the FDIC has failed to plead a factual basis for its gross-negligence claim. But the FDIC alleges that Defendants disregarded their duties when they approved loans that had inadequate documentation or otherwise did not comply with the Bank's underwriting standards. At this stage, this is sufficient to plead a claim for gross negligence.

### 4. Business Judgment Rule

Defendants argue that Minnesota's business judgment rule insulates them from liability. In addition, Defendants insists that a motion to dismiss is the appropriate way to

seek the application of the business judgment rule, because the defense is apparent from the face of the Complaint. Therefore, according to Defendants, the FDIC has the burden to plead facts establishing a violation of the rule. Defendants contend that the FDIC has failed to plead such facts.

Minnesota's business judgment rule provides that a "disinterested director(s) [making] an informed business decision, in good faith, without an abuse of discretion . . . will not be liable for corporate losses resulting" from that decision. Janssen v. Best & Flanagan, 662 N.W.2d 876, 882 (Minn. 2003). Even if Defendants are correct that the FDIC is obligated to plead against this defense, the FDIC has certainly done so, alleging that the Committee acted in bad faith and contrary to reasonable business decision-making. This is sufficient.

But it is clear that the application of the business judgment rule is a question of fact that cannot be determined on a motion to dismiss. The case on which Defendants rely most heavily, FDIC v. Willetts, 48 F. Supp. 3d 844 (E.D.N.C. 2014), illustrates the impropriety of determining the applicability of the business judgment rule on a motion to dismiss. The court in Willetts considered a motion for summary judgment based, in part, on the business judgment rule. Although the court granted the motion for summary judgment, it noted that it had earlier rejected a motion to dismiss based on the business judgment rule because "[a]t that stage, the Court could not know whether the business judgment rule shielded defendants' liability absent further factual development . . . ." Id. at 849. There is no support for Defendants' contention that the Court should apply the business judgment rule on a motion to dismiss.

**CONCLUSION**

Defendants' Motion to Dismiss is a premature motion for summary judgment, and the Motion for In Camera Review is a premature motion to compel discovery. Accordingly, **IT IS HEREBY ORDERED that**:

1. Defendants' Motion to Dismiss (Docket No. 14) is **DENIED**; and

2. Defendants' Motion for In Camera Review (Docket No. 15) is **DENIED**.


Date: July 14, 2015

      *s/Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge